No. 46,059

NEVA E. MARSHALL, *Appellee*, v. FERREL MARSHALL, *Appellant*.

(490 P. 2d 388)

Opinion filed November 6, 1971.

*Kenneth Clark*, of Hill City, argued the cause, and *Robert Osborn*, of Stockton, was with him on the brief for the appellant.

*Stanley Krysl*, of Hindman and Krysl, of Stockton, argued the cause, and *D. A. Hindman*, of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This is an appeal by the defendant husband from a judgment granting a divorce to the plaintiff wife, and from those aspects of the decree dealing with alimony and the division of the parties' property.

The record reflects the parties' marriage in 1940, a joint struggle of twenty-nine years to raise plaintiff's two sons by a prior marriage and a daughter born to the parties in 1951, and the accumulation of assets totalling $13,750, subject to outstanding debts. Such domestic difficulties as the parties may have had reached a peak in the winter of 1967-68. Plaintiff testified as to numerous quarrels, her husband's threats, his drinking, her resulting fear of him and calls to the police, and the nervous condition engendered in both her and their daughter. Plaintiff moved from the home in the early spring of 1968, and this action was filed in July of that year.

Appellant's answer denied all and contained a counterclaim alleg-

ing her removal from the home, that it was no longer possible for the parties to live together as man and wife, and praying that a divorce be granted to him.

During the year and a half of separation and the year the action was pending plaintiff went daily to appellant's home where she cleaned house, washed clothes, ironed, did mending and made the bed. This continued until June 10, 1969, a month before trial, when she was told that appellant had changed the lock on the house. Three efforts at reconciliation were summarily rebuffed by appellant.

Appellant here contends that the trial court erred in granting a divorce because the plaintiff's testimony was not corroborated as was required by former K. S. A. 60-1609 (d), in effect at the time the action was tried in July, 1969. The issue does not appear to have been pressed at trial. The bulk of plaintiff's testimony dealt with the contributions she and her sons had made over the years to the support of the family unit through their work, and the receipt through her inheritance of the bulk of the parties' assets. The trial court's findings of fact deal almost exclusively with the details of the financial struggle; only in his conclusions of law does he make a general finding that plaintiff is entitled to a divorce. In the same vein, appellant's testimony went largely to minimizing his current capability to pay alimony. As a result we find the trial court prefacing his findings of fact by the statement:

"This is a divorce action. Each of the parties employed counsel following a separation resulting from endless quarrels. The only real problem presented to the Court is a proper division of the property and alimony."

Nevertheless, appellant cites our cases holding that corroboration was essential under the applicable statute and its predecessors, that courts could not waive this statutory requirement and that the corroboration must have pertained to the statutory grounds for divorce. *Moran v. Moran,* 196 Kan. 380, 411 P. 2d 677; *Lindeman v. Lindeman,* 195 Kan. 357, 404 P. 2d 958; *Walton v. Walton,* 166 Kan. 391, 202 P. 2d 197; *Frye v. Frye,* 134 Kan. 3, 4 P. 2d 415. Those principles were undoubtedly applicable. On the other hand, "This court has said that corroboration is not necessary to support every allegation throughout the course of mistreatment or every detail of a plaintiff's testimony." *Gardner v. Gardner,* 192 Kan. 529, 531, 389 P. 2d 746. The requirement was that ". . . the corroboration should be such as will tend to establish some fact or facts testified to by plaintiff so as to make her testimony more probable and legally acceptable."

*Hoppe v. Hoppe,* 181 Kan. 428, 431-2, 312 P. 2d 215. Such evidence could be circumstantial as well as direct, and if convincing to the trier of facts a judgment based thereon will not be disturbed on appeal. *Tuley v. Tuley,* 168 Kan. 106, 211 P. 2d 95. See also *Carter v. Carter,* 191 Kan. 80, 379 P. 2d 311; *Kelso v. Kelso,* 182 Kan. 665, 324 P. 2d 165.

Here the challenged corroborating testimony was given by the Stockton chief of police. Essentially he testified to receiving marital disturbance calls from plaintiff on six or seven occasions during the winter of 1967-68; that she reported being afraid of appellant, who was said to be drinking heavily; that he responded to each call and talked to appellant on each occasion; that appellant, although he wasn't drunk on any of these occasions, may have been drinking, may have been mad on occasion and may have argued. We believe this testimony, while meager, was sufficient to lead the trial court to conclude, as it obviously did, that plaintiff's testimony as to the fact and cause of the parties' quarrels was true. This was sufficient to justify the decree.

What we have said largely disposes of appellant's claim with respect to the property settlement. Relying largely on *Moran v. Moran,* 196 Kan. 380, 411 P. 2d 677, he urges that because the corroboration was insufficient the divorce decree must fall, and the property division, which *may* have been based on an erroneous conception of his "fault," must fall with it.

In *Moran* the trial court had awarded a divorce to *each* party, based on the fault of the other. This court found the claim of fault on the part of the husband to be wholly uncorroborated. Since it appeared that the amount of alimony granted the wife had been determined by the trial court in the light of its (erroneous) finding that the wife was entitled to a divorce, in remanding the case this court directed the trial court to reconsider the amount of alimony. The case is inapplicable because here we find no error in granting the divorce. In addition, there is no showing that the property division was influenced by a finding of fault or anything other than a weighing of the contributions made by the parties to the marital estate. No other basis for attack on this exercise of the trial court's discretion is put forth or is apparent to the court. The property division must therefore stand.

Appellant's final contention is that the trial court erred in granting judgment to plaintiff in the sum of $1,800, denominated "tem-

porary support." The petition contained no prayer for temporary support or temporary alimony, and the plaintiff made no application for any during the pendency of the action. A pre-trial conference was held on the same day as and immediately prior to the trial itself, at which the following colloquy occurred:

"THE COURT: Do you agree that $13,750.00 is substantially the value of the assets in this case?

"MR. KRYSL (plaintiff's counsel): I think that sure covers it all.

"Then, against that we have indebtedness—excuse me, Judge, there isn't quite $2,000.00 in savings. Mrs. Marshall told me that there is $600.00 left in the savings account. She spent the rest of it. We can account for it, Judge. I would say this for the records that she hasn't had any money from the defendant in '68 or '69. In 1968 she had $250.00. In 1967 she had a total of $1,075.00 that he gave her to run the house and so forth. She spent most of that for support.

"THE COURT: The case was filed on what date?

"MR. KRYSL: July, I believe, last year; it has been on file 12 months.

"THE COURT: It is agreed he has not paid her any support money during the twelve months.

"MR. KRYSL: That is right. She has been employed during the time.

"THE COURT: He has a duty to support her. I am going to charge $1800.00 for her support, which taken off that $2,000.00, makes the figure $200.00."

The result was the following paragraph in the journal entry:

"9. Defendant having paid no temporary support to plaintiff, she is hereby awarded judgment against defendant in the sum of $1800.00 for temporary support during the pendency of this action."

From the foregoing it is difficult to determine whether the amount awarded was in fact intended to be temporary support, or whether it was either permanent alimony or part of the property settlement. In any event the court's action must be based on statutory authority. Thus we have said:

"The power to grant a divorce is statutory and does not come through the common law. . . . The doctrine of alimony is based upon the common-law obligation of the husband to support the wife, which is not removed by his misconduct. The right of the courts, however, to grant alimony is statutory, and the general rule is that courts of equity have no power to decree permanent alimony in the absence of statutory authority." (*Hendricks v. Hendricks,* 136 Kan. 69, 70, 12 P. 2d 804.)

We have also said, many times, that a trial court is vested with wide discretion in adjusting the financial obligations of the parties in a divorce action and that its exercise of that discretion will not be disturbed on appeal in the absence of a showing of clear abuse.

See, *e. g., Folk v. Folk,* 203 Kan. 576, 455 P. 2d 487, and cases cited therein.

Nevertheless, the court's action must comply with our statutes. It may, while the action is pending, provide for "the support, if necessary, of either party. . . ." (K. S. A. 60-1607 (*c*).) In its final decree it may divide property "in a just and reasonable manner," (K. S. A. 1970 Supp. 60-1610 (*b*)) and may award either party future support "in such amount as the court shall find to be fair, just and equitable under all of the circumstances." (Id., (*c*).)

On this record there was no showing of "necessity" for temporary support—instead, the record indicates that the award and its amount were both plucked out of the air by the court on its own motion, and only on the day of trial. Hence, despite the label attached to it, the $1,800 could not have been "temporary support."

The trial court's rationale is at best unclear, but apparently the award stemmed from a conviction that a husband has an unqualified duty to support his wife, to be enforced whether the wife requests it or not. This concept does not square with the provisions of 60-1610 (*c*) authorizing an award of alimony to either party regardless of fault, as explicated by such cases as *Moran v. Moran,* 196 Kan. 380, 411 P. 2d 677; *Zeller v. Zeller,* 195 Kan. 452, 407 P. 2d 478; and *Saint v. Saint,* 196 Kan. 330, 411 P. 2d 683. Even so, such an award must be based on some evidence. Compare *Craig v. Craig,* 197 Kan. 345, 416 P. 2d 297, with *Brooker v. Brooker,* 199 Kan. 783, 433 P. 2d 363. As noted above, there was no evidence here supporting the figure of $1,800.

This portion of the judgment might be sustained as part of the property settlement if it were possible to infer that it was so intended. The record, however, does not seem reasonably susceptible to such interpretation. We are therefore forced to conclude that the item of "temporary support" is without statutory or evidentiary basis, and its inclusion in the judgment was error.

Accordingly the judgment is reversed as to the award of temporary support found in paragraph 9 of the journal entry. In all other respects the judgment is affirmed.

APPROVED BY THE COURT.

OWSLEY, J., dissents on the ground that the judgment should be affirmed *in toto.*